UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DARTANIEL PRUITT,

    Plaintiff,

v.

KENNY BENZING, et al.,

    Defendants.

Case No. 21-cv-00167-JPG

### MEMORANDUM AND ORDER

This matter is before the Court for consideration of a Motion for Summary Judgment filed by Defendants Kenny Benzing ("Benzing"), Marion County Jail Administrator, and Marion County Sheriff Rich Stevenson ("Stevenson," collectively "Defendants") (Doc. 53). For the reasons set forth below, the motion shall be **GRANTED,** Defendants Benzing and Stevenson shall be **DISMISSED**, and this case **DISMISSED**.

#### BACKGROUND

Plaintiff Dartaniel Pruitt ("Plaintiff" or "Pruitt") filed this civil rights action *pro se* pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights at Marion County Law Enforcement Center ("Jail"). (Doc. 1). Because Pruitt testified that he was a pretrial detainee while housed at the Jail, and he was transferred to the Pulaski County Jail, his claim arises under the Fourteenth Amendment Due Process Clause. (Doc. 54 at 10). Plaintiff complaint alleges various unconstitutional conditions of confinement at the Jail from October to December 2020. *Id*. at 12. Following preliminary review of this matter under 28 U.S.C. § 1915A, the Court dismissed counts 1, 2, and 4 against all defendants for a failure to state a claim for relief. Pruitt was allowed to proceed with one claim - Count 3 regarding a claim under the eighth or fourteenth amendments

for failing to mitigate the spread of coronavirus by providing masks to inmates and staff at the Jail and other failures to mitigate virus spread. (Doc. 9).

### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants Benzing and Stevenson filed for summary judgment on the merits of the claim in Count 3. Defendants asserts that Stevenson and Benzing did not violate Plaintiff's constitutional rights in the manner set forth in Plaintiff's Complaint. Plaintiff testified that he was a pretrial detainee while he was housed in Marion County Jail, and therefore the proper scope of his complaint regarding conditions of confinement arises under the Fourteenth Amendment's Due Process Clause.

### PLAINTIFF'S RESPONSE

Pruitt counters that genuine issues of material fact preclude summary judgment (Doc. 55). Plaintiff's response does not contain any new factual allegations, legal authority, or pieces of evidence to dispute Defendants' assertions or to indicate there is a genuine issue of material fact. His response cites to Defendants' declarations and offers his opinions to those declarations to defeat summary judgment. It is not enough to defeat summary judgment.

### FACTS

Pruitt argues that Defendants violated Plaintiff's rights when they failed to take steps to mitigate serious risk of COVID-19 exposure at the Jail beginning in October 2020 by failing to require masks. Plaintiff argues there is evidence that a fact finder could find in Plaintiff's favor.

A. Benzing

Benzing offers the following facts in his deposition. Defendant Benzing was an administrator at the Jail from July 2017 to July 2021. (Doc. 54 at ¶ 1). Benzing contends that he is aware COVID-19 restrictions began in March 2020, as well as the Governor announced

several mitigation strategies for Illinois throughout the course of the pandemic but does not recall what restrictions were placed on jails initially. *Id*. at ¶¶ 4-6. He was briefed on how to implement the state's mitigation strategies by the Illinois sheriff's association and encouraged from the Marion County Department of Public Health ("Public Health"). *Id*. at ¶¶ 7-8. In fact, Benzing and the Jail nurse communicated with the Director of the Public Health once a week to review and follow recommendations. *Id*. at ¶ 10.

Benzing indicates that during the pandemic, when inmates were booked into the Jail, they were housed in the Jail's separate recreation area to keep them isolated from the general population for 96 hours. *Id*. at ¶ 11. If inmates showed no COVID-19 symptoms as determined by the Jail's nurse after the 96 hours, they were moved into the general population. *Id*. at ¶ 12. If new inmates did show symptoms of COVID-19, they would be moved to a housing block or isolation cell exclusively used for quarantine. *Id*. at ¶ 13. All new inmates were subject to the intake screening process. *Id*. at ¶ 14. If inmates already housed in general population shows symptoms of COVID-19 as determined by a nurse, they would be isolated in a cell. *Id*. at ¶ 15. Benzing gave the Jail's nurse the authority to make housing decisions in the event an inmate shows COVID-19 symptoms. *Id*. at ¶ 16.

Benzing does not recall when COVID-19 testing was available for use at the Jail but if an inmate required testing, as determined by the nurse, nurse practitioner, or physician, a nurse contact Public Health to arrange for testing. *Id*. at ¶ 18. If a nurse, nurse practitioner, or physician determined an inmate required medical care, including for COVID-19, that was unavailable at the Jail, any of those individuals would contact Benzing or duty officer to arrange transportation. *Id*. at ¶ 20. If there was an emergency, medical staff would notify correctional staff who would contact 911 or dispatch. *Id*. at ¶ 21. According to Benzing, medical and nursing staff was

responsible for medical care and not correctional staff. *Id*. at ¶ 22.

Benzing did not require correctional officers wear masks unless they could not avoid being within six feet of another individual, including prisoners, for more than 10-15 minutes. *Id*. at ¶ 24. Inmates were not given masks to wear because the metal nose piece was considered a safety and security issue, and therefore contraband. *Id*. at ¶ 25. The guidance regarding COVID-19 mitigation rapidly changed during the pandemic and most changes were communicated verbally by Benzing, shift Sargent, or most senior officer on duty during shift change. *Id*. at ¶ 27.

Inmates were provided with safe and effective cleaning supplies. *Id*. at ¶ 28. Additionally, with the exception of cell changes due to COVID-19 symptoms, movement of prisoners within the jail was limited to avoid transmission. There also was a restriction of movement to the library and recreation room. *Id*. at ¶ 29.

**B. Stevenson**

Stevenson was the Marion County Illinois Sheriff from December 1, 2014 to June 30, 2021 and Benzing's direct supervisor. *Id*. at ¶ 30. According to Stevenson, Benzing was responsible for day-to-day operations of the Jail's COVID-19 policies, in consultation with on-site medical professionals and Public Health. *Id*. at ¶ 31. Stevenson and Benzing received briefings on how to implement COVID-19 mitigation strategies. *Id*. at ¶ 32. Stevenson was present for some calls that Benzing and the Jail nurse had with Public Health. *Id*. at ¶ 33. Stevenson was aware that Benzing made the decision inmates would not be issued masks because it was a security issue and was aware of the screening process. *Id*. at ¶ 36. He knew that Benzing nor other correctional staff refused to allow COVID testing for inmates and indicated all medical care decisions were made by the Jail's medical staff. *Id*. at ¶ 39-40.

### C. Pruitt

Plaintiff was also deposed in this matter. Plaintiff indicated he knew how to request a sick call, and has never been refused a sick call request form, and has been seen by a nurse every time he requested a sick call. *Id*. at ¶ ¶ 43-45. He did not know what the Public Health guidance entailed about COVID-19 mitigation efforts. *Id*. at ¶ 47. It was Plaintiff's understanding new Jail inmates were housed for 48 hours before transferring into general population and was not aware of what evaluation or assessment was done during that time. *Id*. at ¶ 49-50. He had adequate cleaning supplies. *Id*. at ¶ 51.

In August 2020 he told a lieutenant that he did not feel well, and the lieutenant got the nurse to evaluate him. The nurse took his vital signs and told him he had the flu. *Id*. at ¶ 54. He is suing Stevenson because he was Benzing's supervisor. *Id*. at ¶ 55. No medical professional informed him that he was suspected of COVID and his belief he had COVID is based on his assumption. *Id*. at ¶¶ 57, 61. No medical professional at later institutions Plaintiff transferred to, including Pulaski County Jail and FCI Williamsburg, informed him he suffered from medical problems related to COVID-19. *Id*. at ¶ 59.

### LEGAL STANDARD

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is proper only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see Anderson v. Donahoe*, 699 F.3d 989, 994 (7th Cir. 2012). The moving party has the burden of establishing that no material facts are genuinely disputed. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Lawrence v. Kenosha Cnty*., 391 F.3d 837, 841 (7th Cir. 2004). Any doubt about the existence of a genuine issue must be resolved in favor of the nonmoving party.

*Lawrence*, 391 F.3d at 841.

When presented with a motion for summary judgment, the Court does not decide the truth of the matters presented, and it cannot "choose between competing inferences or balance the relative weight of conflicting evidence." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Hansen v. Fincantieri Marine Grp.*, LLC, 763 F.3d 832, 836 (7th Cir. 2014) (citations omitted). Once a properly supported motion for summary judgment is filed, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson*, 477 U.S. at 250. The Court must then "view all the evidence in the record in the light most favorable to the nonmoving party and resolve all factual disputes in favor of the non-moving party." *Hansen*, 763 F.3d at 836. A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017). The Court is only required to consider the materials cited by the parties, see Fed. R. Civ. P. 56(c)(3); it is not required to "scour every inch of the record" for evidence that is potentially relevant. *Grant v. Tr. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017).

## DISCUSSION

Plaintiff's claims are governed by the Fourteenth Amendment Due Process Clause, as he was a pretrial detainee at all relevant times of this case. *See Kingsley v. Hendrickson*, 576 U.S. 389, 395-96 (2015); *Budd v. Motley*, 711 F.3d 840, 842 (7th Cir. 2013). The Court applies a two-part analysis to Fourteenth Amendment claims related to inadequate medical care and/or conditions of confinement. *See Miranda v. County of Lake*, 900 F.3d 335, 353 (7th Cir. 2018); *McCann v. Ogle Cnty., Illinois*, 909 F.3d 881, 886 (7th Cir. 2018). First, the Court examines whether the "defendants acted purposefully, knowingly, or perhaps even recklessly when they

considered the consequences of their handling of [plaintiff's] case." *McCann*, 909 F.3d at 886 (citing *Miranda*, 900 F.3d at 353). The second question is whether the defendant's conduct was objectively reasonable based on the totality of circumstances faced by the defendant. *Id*. Courts must afford deference to officials' decisions regarding the best ways to achieve legitimate penological goals. *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015).

The objective reasonableness inquiry "requires courts to focus on the totality of the facts and circumstances faced by the individual alleged to have provided inadequate medical care and to gauge objectively—without regard to any subjective belief held by the individual—whether the response was reasonable." *McCann v. Ogle Cty., Ill*., 909 F.3d 881, 888 (7th Cir. 2018). Liability attaches only where the official "acted purposefully, knowingly, or perhaps even recklessly" when taking the actions at issue—negligence, or even gross negligence, will not suffice. *Miranda*, 900 F.3d at 352-53. The officers' response is objectively unreasonable if it is "not rationally related to a legitimate nonpunitive governmental purpose" or is "excessive in relation to that purpose." *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015) (cleaned up).

The crux of Plaintiff's complaint is that he was not given masks and the Jail failed to take steps to mitigate Plaintiff's risk of COVID-19 in violation under the Fourteenth Amendment. The Court finds there was no violation under the Fourteenth Amendment by both Defendants. The Court will take each of Plaintiff's arguments regarding each defendant in turn.

The Court finds Benzing conduct was objectively reasonable based on the totality of circumstances. The Jail's COVID mitigation strategy was multi-pronged. The Jail would screen new inmates and isolate them for 96 hours to monitor for COVID-19 symptoms before going into general population (if no symptoms) or into COVID-19 quarantine (if showcasing symptoms). If inmates in the general population displayed COVID-19 symptoms, they would be isolated in a cell

in accordance with medical advice. A nurse, nurse practitioner, or physician determined an inmate required testing for COVID-19, the nurse would contact Public Health to arrange for testing. If those medical professionals determined an inmate required medical care outside of the Jail, officers would arrange transportation to receive care. If emergency care was required, medical staff would notify correctional staff to contact 911. Determination for testing or medical treatment was determined by medical staff and not correctional staff. Benzing was provided with briefings on mitigation strategies and worked with Public Health once per week to review recommendations for the Jail with the nurse. The Court finds these mitigation strategies objectively reasonable based on the totality of the facts.

  Plaintiff argues the Jail's screening and intake process was the Jail's only way to "stop" inmate infection and it was therefore unreasonable. (Doc. 44 at 3). However, as stated above, the Jail's COVID-19 mitigation policy was multi-pronged. They implemented the intake screening process, testing and transfer policy if inmates displayed COVID-19 symptoms, limited movement within the institution, and provided inmates with cleaning supplies. Plaintiff admitted to some of these facts and therefore his assertion the intake policy was the Jail's only mitigation strategy is incorrect.

  Plaintiff takes issue with Benzing's directive not to provide inmates with masks. This decision not to provide masks was because the metal nose piece could become a safety issue. Given the directive that courts provide deference to official's decisions within an institution, the Court finds that this decision is not objectively unreasonable. *Pegues v. Liberty Healthcare Corp.*, No. 20-4178, 2022 WL 4553190, at *4 (C.D. Ill. Sept. 14, 2022) (finding facility director was not objectively unreasonable where he implemented restrictions recommended by public health officials to mitigate COVID-19 spread, including restrictions on movement, limitation on number

of people, PPE, and quarantines). Additionally, Benzing did not require correctional staff to wear masks if they were able to maintain safe social distancing of 6 feet or less for less than 10-15 minutes. Again, these actions, in light with the recommendations by Public Health are not objectively unreasonable. If staff did not abide by the requirements of Benzing, it does not make the actions of their supervisor Benzing objectively unreasonable. *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009) (no general supervisory liability under §1983). Additionally, the Jail followed the recommendations of Public Health.

Here, Plaintiff admitted he had adequate cleaning supplies, and was never denied a medical visit when requested. Additionally, while he indicates he had COVID-19, that determination is based on his personal belief. The nurse determined he had the flu and not COVID-19 and he never was tested. He also does not indicate any medical professional has no limitations on his abilities to participate in physical activities or suffers from medical issues related to COVID-19. Additionally, unlike in a case recently decided by this Court, Plaintiff does allege he is at a higher risk to COVID-19. *Grady v. Aragona*, No. 20-cv-1206-JPG, 2022 WL 843567, at *3 (S.D. Ill. Mar. 22, 2022) ("In light of the absence of harm to Plaintiff, the disagreements between Plaintiff and Franke on the adequacy of Franke's COVID precautions do not rise to the level of disputed issues of material fact that present a genuine issue for trial."). The Jail mitigated risk of COVID-19 by ensuring screening and quarantine, ensuring symptomatic inmates were not placed into cells with asymptomatic inmates, limiting movement within the institution, and providing cleaning supplies to inmates. Not providing masks in light of the other mitigation strategies does not make Benzing's actions objectively unreasonable under the Fourteenth Amendment.

Stevenson is Benzing's supervisor. While Benzing was responsible for day-to-day operations of the Jail, Stevenson received briefings on how to implement mitigation strategies and

was encouraged to follow recommendations of Public Health. He was present for some calls between Benzing, the Jail nurse, and Public Health regarding COVID-19 response. Here, Plaintiff testified that he was suing Stevenson because he was Benzing's supervisor. "[S]upervisors are responsible for their own acts but not for those of subordinates, or for failing to ensure that subordinates carry out their tasks correctly." *Horshaw v. Casper*, 910 F.3d 1027, 1029 (7th Cir. 2018); *see also Perkins v. Lawson*, 312 F.3d 872, 875 (7th Cir. 2002) ("Under § 1983, there is no *respondeat superior* liability."). Plaintiff does not demonstrate a genuine dispute of material fact that Stevenson personally participated in any alleged constitutional violations to attach liability to him. For that reason, the Court will dismiss Stevenson from this case.

"Qualified immunity is a doctrine that protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Leiser v. Kloth*, 933 F.3d 696, 701 (7th Cir. 2019) (cleaned up). However, because the Court has found that Plaintiff has not demonstrated genuine dispute as to material facts to show that either defendant violated Plaintiff's rights, the Court need not address whether Defendants are subject to qualified immunity.

## Conclusion

The Court hereby **GRANTS** Defendants Benzing and Stevenson Motion for Summary Judgment (Doc. 54). The Court **DISMISSES** Defendants Benzing and Stevenson and **DISMISSES** Plaintiff Pruitt's Complaint with prejudice.

**IT IS SO ORDERED.**
**DATED:  February 22, 2023**

/s/ J. Phil Gilbert
J. PHIL GILBERT
U.S. DISTRICT JUDGE